# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

IKIKO BROWN, 10-B-3588,

          Plaintiff,

     -vs-

               DECISION AND ORDER

CORRECTIONS OFFICER DODGE,
et al.,              18-CV-6491 (CJS)

          Defendants.

## INTRODUCTION

Plaintiff Ikiko Brown ("Brown") brought this case pursuant to 42 U.S.C. § 1983 after an incident that occurred while he was incarcerated at Wende Correctional Facility.[1] Brown alleges a "violation of [P]laintiff's 8th Amendment right to be free from cruel and unusual punishment by the use of excessive force by the action of defendant [Corrections Officer] Dodge, and failure to protect and deliberate indifference by the non-actions of defendants [Corrections Officers] M. Harsch and K. Rosplock." Compl., 5, Jul. 3, 2018, ECF No. 1. Additionally, Brown alleges that "Defendants [Corrections Officers] Dodge, Rosplock, and Harsch further exercised deliberate indifference to Plaintiff's health, by refusing to take him to the infirmary after the assault . . . ." Compl. at 7.

The matter is presently before the Court on Defendants' motion for partial summary judgment on Brown's claims of deliberate medical indifference, and Plaintiff's motion for the appointment of counsel. Mot. Summ. J., Dec. 27, 2018, ECF No. 9; Mot. to Appoint, Jan. 25, 2019, ECF No. 15. For the reasons stated below, Defendants' motion [ECF No. 9] is granted, and Plaintiff's motion for the appointment of counsel [ECF No.

---

[1] Brown has since been transferred to Clinton Correctional Facility. Pl.'s Statement, Jan. 11, 2019, ECF No. 14.

15] is denied. Defendants are directed to answer the remainder of Plaintiff's complaint within thirty days from the date of this order.

## BACKGROUND

The following background is drawn from the statements of fact that the parties are required to submit under local rule of civil procedure 56(a)(1), and is limited to those details relevant to the issue of whether or not Defendants exhibited deliberate medical indifference.

After an incident on September 12, 2015, that involved Defendants Corrections Officers Dodge, Rosplock, and Harsch, Brown was seen by the medical staff at Wende Correctional Facility. Pl.'s Statement, ¶ 1, Jan. 11, 2019, ECF No. 14. According to medical records submitted by Defendants, the examining nurse conducted a visual assessment at 3:25 and noted a two-centimeter bump on the right side of Brown's forehead, a three-centimeter bump on his mid-forehead, and a scratch on his shoulder. Def. Statement (Ex. A), 5, Dec. 27, 2018, ECF No. 9-3. The nurse also noted that Brown was alert and oriented, walked with a steady gait, and did not report any dizziness. *Id.* The nurse applied an ice pack and advised Brown to report to medical for any problems, and then Brown was taken to his cell block. *Id.*

At 5:15 p.m. that same day, Brown was assessed again prior to his admission to the Special Housing Unit ("SHU"). *Id.* The examining nurse noted that Brown was alert and oriented, and that he denied any injury or medical issues. *Id.* Regardless, the nurse explained the sick call process to Brown. *Id.*

According to a series of "sick call slips" submitted with Brown's papers, it appears that in addition to the assessments described above, in the two months following the incident Brown was seen for "sick calls" or by his provider on September 15, 2015, September 17, 2015, September 22, 2015, September 29, 2015, October 5, 2015, October 14, 2015 (by an M.D.), and November 11, 2015. Pl.'s Statement (Ex. H) at 51–55. In addition, on November 9, 2015 and November 20, 2015, the medical staff attempted to make a "sick call" on Brown, but his lights were out so he was not seen. *Id.* at 54–55.

In addition to receiving the medical attention described above, Brown's administrative grievances also appear to have been duly processed. On September 29, 2015, Brown filed a grievance stating that he wanted the correctional facility to pay to replace his eyeglasses that were broken during the incident with Defendants Corrections Officers Dodge, Rosplock, and Harsch. Pl.'s Statement (Ex. A) at 23–24. The grievance was heard by the inmate grievance review committee and the superintendent. *Id.* Thereafter, upon a "full hearing of the facts and circumstances," the Inmate Grievance Program Central Office Review Committee ("CORC") noted that Brown was wearing eye glasses in his ID photograph taken on November 5, 2015, and denied his request that the facility pay to provide him with new eyeglasses. *Id.*

On October 5, 2015, Brown filed another grievance through the inmate grievance program stating that "he is not getting proper care from the Doctor because she never stops to see him. He says he has put in multiple sick call requests but no Doctor sees him at those times." Pl.'s. Statement (Ex. A) at 22. The grievance was again heard by the inmate grievance review committee and the superintendent. *Id.* Thereafter, upon a "full hearing of the facts and circumstances," CORC noted that Brown "was seen at sick call 5

times between 9/15/15 and 10/5/15 and by his provider on 10/14/15." *Id. See also* Pl.'s Statement (Ex. H) at 51–52 (reproducing Brown's health record notes from assessments on September 15, 2015, September 17, 2015, September 22, 2015, September 29, 2015, October 5, 2015, October 14, 2015). Therefore, CORC concluded that it had "not been presented with sufficient evidence to substantiate improper medical care or malfeasance by staff . . . ." *Id.*

On July 3, 2018, Brown filed a complaint in this Court pursuant to 42 U.S.C. § 1983 alleging violation of his Eighth Amendment rights through Defendants' excessive use of force, failure to protect, and deliberate indifference to his serious medical condition. Compl., ECF No. 1. He later amended that complaint to add Anthony J. Annucci as a Defendant, in addition to the already named Defendants Corrections Officers Dodge, Harsch, and Rosplock. Am. Compl., Nov. 19, 2018, ECF No. 5. Defendants moved this Court for partial summary judgment on the deliberate indifference to Brown's medical condition on January 4, 2019, and included a proper *Irby* notice. Mot. for Summ. J., ECF No. 11 and No. 11-2. Brown then moved this Court to appoint him pro bono counsel. Mot. to Appoint, ECF No. 15.

## SUMMARY JUDGMENT STANDARD

It is well-settled that summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "A party asserting that a fact . . . cannot be genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1).

Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The non-movant cannot oppose a properly-supported summary judgment motion with bald assertions that are not supported by the record. *See, Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."), *as amended on denial of reh'g* (Dec. 22, 1999). Rather, the non-movant must support its assertion that a fact is genuinely disputed by citing to particular parts of the record or showing that the materials cited by the movant are inadmissible or do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

Under *Irby v. New York City Transportation Authority*, 262 F.3d 412 (2d Cir. 2001), unless the opposing party has already provided the *pro se* litigant with the requisite notice, the court is obligated to inform him that failure to respond to a motion for summary judgment may result in the grant of judgment for the party seeking summary judgment and dismissal of the case. Moreover, when a litigant is *pro se*, his pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the *pro se* litigant must still establish the existence of genuine issues of material fact to survive a motion for summary judgment; the *pro se* party's "bald assertion," when unsupported by evidence, is insufficient. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995).

Bearing the above in mind, summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## DELIBERATE INDIFFERENCE

Defendants argue that they are entitled to summary judgment on Brown's claims of deliberate indifference to his medical needs because he fails to demonstrate either the objective or the subjective dimensions of his claim. Defs.' Mem. of Law, 3–5, Dec. 27, 2018, ECF No. 9-4. Brown responds that Defendants knew of his serious medical condition, yet disregarded his medical needs. Pl.'s Mem. of Law, 1, Jan. 11, 2019, ECF No. 14. He states that "not to provide and/or seek outside medical attention, MRI CAT SCAN etc. to evaluate [his] injuries, [was] a direct[] violation of" his Eighth Amendment rights. *Id.*

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). Such cases include those in which the claims are insufficient as a matter of law, and the record before the court is sufficient for it to conclude that "no amount of discovery would breathe life into" the claims. *M.B. v. Reish*, 119 F.3d 230, 232 (2d Cir. 1997). For the reason stated below, the Court believes that partial summary judgment is appropriate in this case.

The legal principles applicable to claims filed pursuant to 42 U.S.C. § 1983 are well settled. In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 81 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).

The law is equally clear with respect to Eighth Amendment claims arising out of allegedly inadequate medical care:

> "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This standard incorporates both objective and subjective elements. The objective "medical need" element measures the severity of the alleged deprivation, while the subjective "deliberate indifference" element ensures that the defendant prison official acted with a sufficiently culpable state of mind. *See id.*; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996).
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. *See Estelle*, 429 U.S. at 105–06; *Snipes v. DeTella*, 95 F.3d 586, 590–91, (7th Cir.1996), *cert. denied*, 519 U.S. 1126 (1997). In *Estelle v. Gamble*, the Supreme Court explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat "a prisoner's *serious* illness or injury" resulting in the infliction of unnecessary pain and suffering. *Estelle*, 429 U.S. at 105 (emphasis added). "Because society does not expect that prisoners will have unqualified access to health care," a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Chance*, 143 F.3d at 702 (not all claims of inadequate medical care are "constitutionally cognizable"). Similarly, a prisoner must demonstrate more than "an inadvertent failure to provide adequate medical care" by prison officials to successfully establish Eighth Amendment liability. *See, e.g., Estelle*, 429 U.S. at 105–06 (noting that mere negligence in diagnosis or

> treatment is insufficient to state a valid Eighth Amendment claim and emphasizing that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety,'" *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)), a state of mind "equivalent to the familiar standard of 'recklessness' as used in criminal law." *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (per curiam).

*Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).

After a thorough review of the record, the Court finds that Defendants have met their burden to show that no genuine dispute exists with respect to the medical treatment Brown received. As set forth above, exhibits submitted by both parties indicate that Brown had multiple medical evaluations by prison medical staff, none of which indicate a diagnosis of a serious medical condition. In addition, Brown himself states that he "doesn't contend that []he wasn't seen by medical staff, but he didn't receive adequate medical treatment . . . . I should [have received] outside medical treatment, which would of consisted of all or one of the following: A cat scan, MRI or an X-Ray, but I didn't . . . ." Pl.'s Statement at 5.

Brown, on the other hand, has failed to make a threshold showing of serious illness or injury that would adequately state his Eighth Amendment claim for denial of medical care. *Hudson*, 503 U.S. at 9. Although Brown asserts that he still suffers from chronic migraine headaches, blurred vision, and mental anguish, he has provided no documentary evidence of these conditions to controvert the medical records submitted by Defendants – and by Brown himself – which show that the prison medical staff diagnosed him with relatively minor injuries.

Moreover, even if Brown's condition was sufficiently serious, he has not shown that Defendants acted with deliberate indifference. In that regard, he cannot show that

Defendants were personally aware of his complaints or the serious symptoms he alleges. Even assuming that Brown is correct that he should have been sent out for a CAT scan or MRI to properly diagnose his head injuries, such a conclusion would indicate that at most, Defendant was negligent. However, negligence is insufficient to establish a claim of deliberate indifference to a serious medical need. *Preslar v. Dr. Tan*, No. 00-CV-6103 CJS, 2003 WL 553273, at *4 (W.D.N.Y. Feb. 6, 2003) (collecting cases to support the proposition that "[a]llegations of negligence in diagnosis or treatment alone, without facts supporting a charge of deliberate indifference, cannot support a claim under § 1983.").

## MOTION TO APPOINT COUNSEL

Lastly, in considering Brown's request for the appointment of counsel, the Court must first determine whether his position seems likely to be of substance. *Brown v. Wayne Cty. Sheriff's Office*, No. 18-CV-06573 CJS, 2018 WL 6592684, at *4–5 (W.D.N.Y. Dec. 13, 2018). If any claim meets this threshold requirement, the Court shall then consider a number of other factors in making its determination. *See Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). Although this action was commenced in 2018, Defendants have not yet fully responded to Brown's allegations. The only facts upon which this Court may base its decision are those portions of the complaint where Plaintiff states the facts surrounding his remaining claims. Thus, the Court lacks sufficient information at this stage to consider the factors set forth in *Hodge*. Plaintiff's motion for appointment of counsel [ECF No. 15] is therefore denied without prejudice as premature.

## CONCLUSION

Consistent with the foregoing, it is hereby

ORDERED that Defendants' motion for partial summary judgment [ECF No. 9] is granted; and it is further

ORDERED that Plaintiff Ikiko Brown's motion to appoint counsel [ECF No. 15] is denied; and it is further

ORDERED that Defendants are to file and serve an answer with respect to Brown's remaining claims on or before 30 days from the date of this order.

SO ORDERED.

DATED:   November 18, 2020
         Rochester, New York

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge